Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Catherine Rech*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Catherine Rech,<br><br>        Plaintiff,<br><br>   v.<br><br>The Prudential Insurance Company of America,<br>The Prudential Welfare Benefits Plan,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Catherine Rech (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant The Prudential Insurance Company of America (hereinafter referred to as "Prudential") sponsored, subscribed to and administered an employee welfare benefit plan within the meaning of 29 U.S.C. §1002(7) known as The Prudential Welfare Benefits Plan (hereinafter referred to as the "Plan"), which was created to provide its employees with welfare benefits.  Prudential's purpose in establishing the Plan to provide disability insurance for its employees along with other employee benefits.   At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.     Upon information and belief, based on the Plan documents, assets in the Plan may be held in a trust.  Upon information and belief, long term disability benefits are funded by Prudential or a Prudential owned or controlled entity through a combination of trust assets, employer contributions and insurance contracts.

5.     Upon information and belief, Prudential functioned as its own claims administrator of the plan; however, pursuant to the relevant ERISA regulation, Prudential and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or discretionary power for claim administration in Prudential.

6.     Upon information and belief, Plaintiff believes Prudential labored under a conflict of interest in evaluating her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit*, Prudential's conflict existed in that if it found Plaintiff was disabled, it was

then liable for payment of her disability benefits either by paying benefits from the aforementioned trust, through its own contributions and/or pursuant to a fully insured group disability policy Prudential issued.

7.   Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### Venue

8.   Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

9.   Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7).   Plaintiff seeks disability income benefits from the Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled in this action.

10.   After working for Prudential as a loyal employee, Plaintiff became disabled on or about April 5, 2011 due to serious medical conditions and was unable to work in her designated occupation as a Process Management Specialist.   Plaintiff has remained disabled as that term is defined in the relevant plan continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

11.   Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.   Plaintiff then applied for long term disability benefits under the relevant plan and/or policy which was administered by Prudential, meaning it made the decision with regard to whether Plaintiff was disabled.

Upon information and belief, the relevant plan and/or policy's definition of disability governing Plaintiff's long term disability claim is as follows:

> According to the LTD Program, you are disabled when Prudential determines that:
> - "you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
>
> After 12 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

12.    In support of her claim for long term disability benefits, Plaintiff submitted to Prudential medical records from her treating physicians supporting her disability as defined by the relevant plan and/or policy.

13.    Prudential approved Plaintiff's claim and paid Plaintiff long term disability benefits for the period of October 4, 2011 through November 1, 2012.  In a letter dated October 26, 2012, Prudential notified Plaintiff it was terminating her long term disability benefits effective November 2, 2012.

14.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the October 26, 2012 termination of her long term disability benefits and in support of her appeal, Plaintiff submitted additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant plan.

15.    In support of her appeal, Plaintiff submitted to Prudential a narrative letter dated April 8, 2013 from her board certified general surgeon who opined, "It is unfortunate but there is not any likelihood that [Plaintiff] is going to be able to perform even regular sedentary work for the purpose of sustaining a living now or in the foreseeable future."

16.     Plaintiff also submitted to Prudential a February 20, 2013 letter from another board certified treating physician who opined, "Given the symptoms [Plaintiff] has described, I do not see her as being able to be employed at this time."

17.     Plaintiff also submitted to Prudential a Functional Capacity Evaluation report dated December 14, 2012 wherein after an extensive physical work evaluation, a qualified physical therapist opined, "[Plaintiff's] tests indicate inability to perform tasks, even at the sedentary work level due to her restrictions and limitations" (original emphasis).

18.     Further supporting her appeal, Plaintiff submitted to Prudential a vocational report from a certified vocational expert dated April 23, 2013, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "From a vocational standpoint, it is unmistakable that [Plaintiff] fully meets the strict criteria put forth in her disability policy or any such policy that concerns itself with disability matters.  [Plaintiff] is unable to work in any job that may exist in the national economy."

19.     In addition to the medical records and reports submitted to Prudential, Plaintiff submitted two (2) sworn affidavits from her husband and son who both confirmed Plaintiff is unable to work in any occupation and her medical conditions have not improved in any meaningful way since her date of disability.

20.     As part of its review of Plaintiff's claim for long term disability benefits, Prudential obtained two (2) medical records only "paper reviews" of Plaintiff's claim from two (2) physician reviewers of its choosing.

21.     Upon information and belief, Plaintiff believes the physician reviewers may be long time medical consultants for the disability insurance industry and Prudential.  As a result, Plaintiff believes the physician reviewers may have an incentive to protect their own consulting relationships with the disability insurance industry and Prudential by providing

medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Prudential and which supported the denial of Plaintiff's claim.

22.     In a letter dated May 14, 2013, in order to engage Prudential in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity to provide these reviews to her treating physicians for their response prior to Prudential rendering a final determination in her claim.

23.     Prior to its final denial, Prudential never shared with Plaintiff or her treating medical professionals the reports authored by the physician reviewers and never engaged Plaintiff or her treating medical professionals in a dialogue so they could either respond to the reviewers' reports and/or perfect Plaintiff's claim.   Prudential's failure to provide Plaintiff with the opportunity to respond to the peer reviewers' reports and perfect her claim precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

24.     In a letter dated June 6, 2013, Prudential notified Plaintiff it had denied her claim for long term disability benefits under the plan and/or policy.   In the letter, Prudential also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

25.     In evaluating Plaintiff's claim on appeal, Prudential had an obligation

pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

26.    Prudential failed to adequately investigate Plaintiff's case and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  Prudential's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review and her benefits.

27.    Plaintiff believes Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional when the plan and/or policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

28.     Plaintiff further believes the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Prudential undertook as decision maker and payor of benefits which created an inherent conflict of interest.

29.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Prudential and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Prudential's decision to deny her claim.

30.     With regard to whether Plaintiff meets the definition of disability set forth in the plan and/or policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the plan and/or policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

31.     As a direct result of Prudential's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the plan, the policy and/or Prudential as a result of being found disabled.  Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

32.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

33.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendants to pay Plaintiff her disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Prudential plan and/or policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 25th day of November, 2013.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
          Scott E. Davis
          Attorney for Plaintiff